# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IAN JOBE AND CATHERINE JOBE, HUSBAND AND WIFE, | Civil Action No. 3:10-CV-1710 |
| Plaintiffs, | |
| v. | (Judge Caputo) |
| BANK OF AMERICA, NATIONAL ASSOCIATION; BAC HOME LOANS SERVICING, LP f/k/a COUNTRYWIDE HOME LOANS SERVICING, LP; JOHN DOE 1-10; | (Magistrate Judge Carlson) |
| Defendants. | |

## REPORT AND RECOMMENDATION

### I. Statement of Facts and of the Case

The Plaintiffs, a husband and wife proceeding *pro se*, initiated this action on August 16, 2010, alleging violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*. They also move to quiet title to their home pursuant to Pennsylvania Rule of Civil Procedure 1061. (Doc. 1). In their complaint, the Plaintiffs, who paid the filing fee, name Bank of America, N.A. ("Bank of America") and BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP ("BAC Home Loans"), and John Doe 1-10 as Defendants . (Doc.1).

The Plaintiffs' *pro se* complaint alleges that the Plaintiffs are the owners of a piece of real property in Monroe County, Pennsylvania, located at 16 Laurel Lane in Mount Pocono, Pennsylvania, 18344. (Doc. 1). Their relationship with the Defendants, however, is unclear. In fact, the Plaintiffs repeatedly allege that they have

no business relationship with any Defendant and claim that they own their parcel of property free and clear of any incumbrance, even as they attempt to bring claims against the Defendants based upon a borrower-lender relationship which they deny exists. (Doc. 12 at.1, 2; Doc. 1 at ¶¶ 15-21).[1] In their current complaint, the Plaintiffs state that they never entered into any agreement with the Defendants and that the Defendants are not the owner or holder of any Promissory Note or Mortgage encumbering the property. (Doc. 1 at ¶¶ 20-21). The Plaintiffs then allege that on September 6, 2009, Plaintiff Catherine Jobe received correspondence which they described as an "Adjustable Rate Mortgage (ARM) Interest Rate Adjustment Notice) from Bank of America Home Loans, dated August 17, 2009. (Doc. 1 at ¶ 22). In response, on September 29, Plaintiff Catherine Jobe asserts that she mailed a letter to BAC which she described as a "Qualified Written Request Under REPSA" disputing the debt, stating that the account was an error, and further contending that any negative impact on their credit would violate RESPA and FCRA.. (Doc. 1 at ¶ 23). Also on September 29, 2009, Plaintiff Catherine Jobe claims that she sent a letter to Bank of America Home Loans which she described as a "Notice Under Fair Debt Collection Practices Act Via U.S. Certified Mail, Return Receipt Requested", which disputed the claim and requested all information allowable under the FDCPA. (Doc. 1 at ¶ 25). The Plaintiffs allege that Bank of America failed to respond to either of these letters. (Doc. 1 at ¶¶ 24, 26).

According to the complaint, on January 15, 2010, BAC Home Loans sent a letter to the Plaintiffs stating that the information requested in their correspondence

---

[1] We note that this is not the first foray of the Plaintiffs into federal court on real estate disputes relating to this parcel. The Plaintiffs have previously–and unsuccessfully--litigated a quiet title dispute over the settlement on their current parcel of property in an attempt to rescind a mortgage obligation incurred in refinancing their home. Jobe v. Argent Mortg. Co., *LLC*, 373 F.Appx. 260 (3d Cir. 2010).

goes beyond that which is available through a qualified written request made pursuant to 12 U.S.C. § 2605. (Doc. 1 at ¶ 27). BAC Home Loans stated that the current owner of the note is Wells Fargo Bank, N.A. as trustee for the Benefit of the Certificate Holders, Park Place Securities, Inc., Asset-Backed Pass-Through Certificates Series 2005-WC2W. (Id.) BAC Home Loans also enclosed a copy of the Mortgage and Payment History. (Id.)

The complaint then recites five other efforts by the Defendants to respond to the Plaintiffs' requests for information. Specifically, the Plaintiffs allege that between June and August, 2009, they received the following documents from the Defendants: On June 22, 2010, BAC Home Loans mailed letters entitled "Home Loan Summary" and "Escrow Account Review" to the Plaintiffs. (Doc. 1 at ¶¶ 28, 29). On June 30, 2010, BAC Home Loans mailed a statement to the Plaintiff Catherine Jobe. (Doc. 1 at ¶ 30). On July 6, 2010, Plaintiff Catherine Jobe mailed a letter to BAC Home Loans, entitled "Notice Under Fair Debt Collection Practices Act Via U.S. Certified Mail, Return Receipt Requested," which disputed the June 22, 2010, letter and requested all allowable information under the FDCPA. (Doc. 1 at ¶ 31).On July 16, 2010, BAC Home Loans responded to the Plaintiff enclosing all available loan documents, but the Plaintiffs allege they did not verify or include any proof or validation of the alleged debt. (Doc. 1 at ¶ 32).On July 29, 2010, BAC Home Loans sent the Plaintiffs a letter entitled, "Home Loan Summary." (Doc. 1 at ¶ 33).The Plaintiffs then alleges that a TransUnion credit report dated August 9, 2010, for Plaintiff Catherine Jobe showed "BAC Home Loans SERV LP #70918946 ... Past Due: $25,254." (Doc. 1 at ¶ 34). An Experian credit report dated August 10, 2010, for Plaintiff Ian Jobe stated that the mortgage was paid and closed. (Doc. 1 at ¶ 35).

Thus, upon a close examination of the Complaint, it appears that the Plaintiffs are claiming that they have fully satisfied a mortgage that encumbered their property at one point in time, but that inaccurate information regarding the status of their mortgage may exist on some credit reports. The Defendants, in turn, appear to allege

that they are the lawful servicers of a mortgage agreement between Plaintiffs and an unidentified lender. (Doc. 8 at 4). However, the record is devoid of any allegations, documents, or any substantial information which clarifies the nature of the commercial relationship between Plaintiffs and Defendants, or the current status of any mortgages.

On September 8, 2010, Defendants Bank of America and BAC Home Loans filed a joint motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and a brief in support thereof. (Docs. 7 and 8). The Defendants argue that Plaintiffs have not pleaded adequate facts to support the claims set forth in their Complaint. (Docs. 7, 8 and 13). On October 20, 2010, the Plaintiffs filed a brief in opposition of the Defendants' Motion to Dismiss the Complaint. (Doc. 12). On October 29, 2010, the Defendants filed a Reply Brief. (Doc. 13). Accordingly, this matter is now ripe for resolution. For the reasons discussed below, we recommend that the Defendant's motion to dismiss pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure be granted and that the Plaintiff's be given leave to amend their Complaint.

**II.     Discussion**
**A. Rule 12(b)(b6), Standard of Review**

The Defendants have moved to dismiss this complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The United States Court of Appeals for the Third Circuit recently noted this evolving benchmark standard for legal sufficiency of a complaint stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Philips[v. County of Allegheny, 515 F.3d 224, 230 (3rd Cir. 2008)] and culminating recently with the Supreme Court's decision in Ashcroft

> v. Iqbal __U.S.__, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UMPC Shadyside, 578 F.3d 203, 209-10 (3rd Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all allegations in the complaint, and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3rd Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3rd Cir. 1997). Further, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." Associated Gen. Contractors of Cal. V. California Staet Council of Carpenters, 459 U.S. 519, 526 (1983). The Supreme Court has stated that in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). The Court in Twombly stressed that the allegations and the supporting facts must raise a right to relief to something higher than a speculative level. Id. Recently, the Supreme Court refined these pleading requirements stating that the pled facts must amount to more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, __U.S.__, 129 S.Ct. 1937, 1949 (2009). Thus, when reviewing pleadings for sufficiency, the Supreme Court advises trial courts to:

> Begin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. At 1950.

As such, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions and raise the plaintiff's claimed right to relief beyond the level of mere speculation. The United States Court of Appeals for the Third Circuit advised that:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

Applying these guiding principles, we find that the allegations set forth in the Plaintiff's complaint are insufficient to state a claim upon which relief can be granted. Therefore, that complaint should be dismissed.

**B.     The Plaintiffs' claim pursuant to the Fair Debt Collections Practices Act should be dismissed**.

The Plaintiffs argue in Counts I, II, and III of their Complaint that the Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.*. In Count I, the Plaintiffs claim that the Defendants failed to disclose, within five days of the initial communication, that the Plaintiffs have a right to dispute their debt within 30 days as mandated by 15 U.S.C. § 1692(a)(3). (Doc. 1 at ¶42). In Count II, the Plaintiffs argue that the Defendants failed to disclose, within five days of the initial communication, the name of the creditor to whom the debt was allegedly owed, a violation of 15 U.S.C. § 1692(a)(2). (Doc. 1 at ¶ 47). In Count III, the Plaintiffs allege that the Defendants contacted a family member in an attempt to collect a debt, a violation of 15 U.S.C. § 1692(f) which prohibits using unfair and unconscionable means to collect a debt. (Doc. 1 at ¶¶ 53, 55).

The difficulty with this claim is that the Plaintiffs have not pleaded facts which would allow us to conclude that the FDCPA applies here. Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Since the FDCPA only applies to debt collectors, the legal and factual predicate to an FDCPA claim is an allegation that the defendant was acting as a "debt collector" within the meaning of the Act. The FDCPA defines a "debt collector" as:

> any person who uses an instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. . . . such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is th enforcement fo security interests.

15 U.S.C.§ 1692(a)(6).

Here, the Plaintiffs allege that by sending various letters and notices to their residence, the Defendants harmed them in violation of the FDCPA. But the Plaintiffs do not allege any facts showing that the Defendants were acting as "debt collectors."This is a significant omission since courts have consistently held that "the FDCPA is not applicable to a creditor seeking to recover a debt owed to it." Conklin v. Purcell, Krug & Haller, No. 05-1726, 2007 WL 404047, *5 (M.D. Pa. Feb, 1, 2007); Police v. Nat'l Tax Funding, LP., 225 F.3d 379, 403 (3d Cir. 2000) ("Creditors—as opposed to 'debt-collectors'—generally are not subject to the FDCPA.") (internal citations omitted). This exemption applies equally to mortgage servicing companies. Conklin, 2007 WL 404047, at *5 (citations omitted). Thus, on the face of the statute, and the Jobes' complaint, the Bank of America and BAC Home

Loans simply do not fall within the statute definition of "debt collector." Rather, BAC Home Loans is the servicer of the obligation and is excluded.

While creditors and mortgage servicing companies are generally exempt from the FDCPA, courts have acknowledged a very limited exception for mortgage servicers who began servicing the loan after the mortgagee defaults on the mortgage. Id. at *5. In this setting, a mortgage servicing company may be acting as a debt collector and, as such, would be subject to the FDCPA. Id. In the instant matter, however, where the Plaintiffs appear to allege that they have either remained current on their mortgage or fully satisfied the mortgage, the FDCPA would not apply to any of the Defendants.

The United States District Court for the Eastern District of Pennsylvania addressed a similar situation in Rubenstein v. Dovenmuehle Mortgage, Inc., No. 09-721, 2009 WL 3467769 (E.D. Pa. Oct. 28, 2009). In Rubenstein, the Plaintiff remained current with his mortgage and the court noted that "[the Plaintiffs] have argued that the mortgage was paid in full before Defendants ever owned and serviced it, and therefore they can not-and, in fact, do not-contend that the mortgage was in default." Rubenstein, 2009 WL 3467769, at *4. See also Dawson v. Dovenmuehle Mortgage, Inc., No. 00-6171, 2002 WL 501499 (E.D. Pa. April 3, 2002) (where the Plaintiff alleged that he was current with his mortgage obligation, the FDCPA did not apply).

Similar to the Plaintiffs in Rubenstein, the Plaintiffs here do not allege that any of the Defendants became the debt servicer after the Plaintiffs defaulted on their mortgage. In fact, the Plaintiffs seem to allege that they have fully satisfied their mortgage obligation. (Doc. 1 at ¶¶ 23, 35). Thus, as noted in Rubenstein above, the Plaintiffs have failed to adequately plead a facts which state a claim under the FDCPA.

Moreover, even if Defendants Bank of America and BAC Home Loans were considered debt collectors, and not servicers, the Plaintiff's claims pursuant to the

FDCPA in Counts I and II of the Complaint should still be dismissed. The FDCPA requires that the initial communication between the consumer and debt collector be "in connection with the collection of any debt." 15 U.S.C. § 1692g(a). Here, the correspondence sent to the Plaintiffs by BAC Home Loans as described the Jobes was not an attempt to collect a debt. Rather, it was simply performing the duties of a mortgage servicer by providing information to the Plaintiffs.

Finally, the Plaintiffs do not allege facts which would explain why they believe the actions of the Defendants were false, deceptive or misleading as alleged in Count III of the Complaint. This, too, is a significant omission since, as a general rule, "[p]ursuant to Rule 9(b), a plaintiff averring a claim in fraud must specify ' "the who, what, when, where, and how: the first paragraph of any newspaper story."' Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir.1999) (quoting DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir.1990)). 'Although Rule 9(b) falls short of requiring every material detail of the fraud such as date, location, and time, plaintiffs must use "alternative means of injecting precision and some measure of substantiation into their allegations of fraud."' In re Rockefeller Ctr. Props. Secs. Litig., 311 F.3d 198, 216 (3d Cir.2002) (quoting In re Nice Sys., Ltd. Secs. Litig., 135 F.Supp.2d 551, 577 (D.N.J.2001), emphasis supplied)." Animal Science Products, Inc. v. China Nat. Metals & Minerals Import & Export Corp., 596 F.Supp.2d 842, 878 (D.N.J.,2008).

In this case, the complaint's general assertions that the Defendants' actions were false, deceptive or misleading as alleged in Count III of the Complaint simply does not meet the pleading standards required under Rule 9 for civil fraud claims. Thus, the Plaintiff's have failed to plead facts which state claim pursuant to the FDCPA and these claims should be dismissed.

**C.   The Plaintiffs' claim pursuant to the Fair Credit Reporting Act should be dismissed**.

The Plaintiffs also allege that the Defendants violated provisions of the Fair Credit Reporting Act (FCRA), resulting in a negative affect on the Plaintiffs' credit scores. Specifically, the Plaintiffs state:

> Defendants negligently and willfully failed to comply with provisions of the [FCRA] including, without limitation, failing to comply with 15 U.S.C. § 1681s-2(b).  Defendants made false statements to credit bureaus and neglected to make true statements to credit bureaus, resulting in Plaintiffs having negative information on their credit reports and the lowering of their FICO scores.

(Doc. 1 at ¶ 60.)

Congress enacted the Fair Credit Reporting Act to require consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit information in a manner that is fair and equitable to the consumer. 15 U.S.C. § 1681(b).

The FRCA prescribes a specific process for resolving such complaints. Section 1681s-2(b) of the FCRA provides that "[a]fter receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness of accuracy of any information provided by a person to a consumer reporting agency, the person shall [the statute lists several duties with which the entity must comply]." 15 U.S.C. § 1681s-2(b).  This section imposes duties on a reporter of consumer credit information, provided that the consumer first satisfies section 1681i(a)(1-2) of the FCRA which provides that:

> (a) Reinvestigations of disputed information
> **(1) Reinvestigation required.**--
> **(A) In general.**--Subject to subsection (f) of this section, if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge,

conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.
. . .
**(2) Prompt notice of dispute to furnisher of information.--**

**(A) In general.**--Before the expiration of the 5-business-day period beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer or a reseller in accordance with paragraph (1), the agency shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person. The notice shall include all relevant information regarding the dispute that the agency has received from the consumer or reseller.

**(B) Provision of other information.**--The consumer reporting agency shall promptly provide to the person who provided the information in dispute all relevant information regarding the dispute that is received by the agency from the consumer or the reseller after the period referred to in subparagraph (A) and before the end of the period referred to in paragraph (1)(A).

15 U.S.C. § 1681i(a)(1-2).

The cumulative guidance of sections 1681i(a)(1-2) and 1681s-2(b) instructs that, in order to state a claim for a violation of section 1681s-2(b), a consumer must first contact the consumer reporting agency and inform the agency of the disputed information. The agency then would contact the provider of the information, in this case presumed to be one or more of the defendants, who would then incur the duties provided by section 1681s-2(b).

In this case, nothing in the Plaintiffs' complaint indicates that they have complied with the procedures prescribed by law. Thus, the Plaintiffs have not shown that they had any contact with any consumer reporting agency regarding this dispute with the Defendants. Instead, Plaintiffs merely allege that there is false information on Plaintiff Catherine Jobe's credit report and then speculate that Defendants' misconduct must be the cause. The Plaintiffs allegations and statements fail to meet the statutory requirements as outlined above by the FCRA. As such, the Plaintiffs have failed to plead sufficient facts to support a claim upon which relief can be

granted under the FCRA. Accordingly, the Defendants' motion to dismiss this claim should be granted.

### D.  The Plaintiffs' claim pursuant to the Real Estate Settlement Procedures Act should be dismissed.

The Plaintiffs further allege that the Defendants have failed to respond to their inquiries, failed to notify them regarding transfer of loan servicers, and failed to properly apply payments to their account in violation of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 et seq. (Doc. 1 at 10).

Congress enacted RESPA to protect consumers from excessive costs and abusive practices that had developed in the real estate settlement industry. 12 U.S.C. § 2601. RESPA mandates that "servicer[s] of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other persons" as well as mandating certain time restrictions and content requirements. 12 U.S.C. § 2605(b). RESPA also allows for consumers to access information regarding their settlement and mortgage obligations by implementing a duty to respond to borrower inquiries within a certain time frame and with a sufficiently detailed response. 12 U.S.C. § 2605(e).

While the nature of Plaintiffs's claims pursuant to RESPA are unclear, Plaintiffs appear to allege that Defendants failed to respond to their alleged "QUALIFIED WRITTEN REQUEST UNDER RESPA," in which Plaintiffs dispute an unidentified debt, in violation of section 2605(e). (Doc. 1 at ¶ 23). The Plaintiffs also allege that "Defendants have not properly applied all payments to Plaintiff's account." (Doc. 1 at ¶ 63). Yet while making this claim, the Plaintiffs expressly deny any course of dealings whatsoever with Defendants. Indeed, the Plaintiffs expressly note "***PLAINTIFFS DO NOT ACKNOWLEDGE ANY BUSINESS RELATIONSHIP***" in their response brief. (Doc. 12 at 1.) (emphasis in original). Thus, the Plaintiffs seek protection under a statute that applies in the servicing of

loans and the administration of escrow accounts, both of which Plaintiffs deny ever having with the Defendants.

In this setting, where the Plaintiffs deny facts that are essential to a cause of action under RESPA, it is impossible to determine whether the Plaintiffs have, in fact, submitted a proper qualified written request, triggering responsibilities on the part of the Defendants. A "Qualified Written request" under RESPA is defined as:

> [A] written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that-
> (I) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower. 12 U.S.C. § 2605(e)(1)(B).

Jones v. ABN AMRO Mortg. Group, Inc., 551 F.Supp.2d 400, 411 (E.D.Pa.2008). Because the term, "Qualified Written Request," has a specific meaning under RESPA plaintiffs alleging a violation of this particular provision of the statute must plead with specificity facts which show that they submitted a proper "Qualified Written Request" to the defendants in order to state a claim under §2605. Thus, where "Plaintiffs do not specifically allege that they sent any written correspondence to any Defendant *or that any correspondence met the requirements of a RESPA* [Qualified Written Request][their claims will be dismissed]." Jones v. ABN AMRO Mortg. Group, Inc. 551 F.Supp.2d 400, 411 (E.D.Pa.,2008)(emphasis added).

Moreover, "alleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiffs must, at a minium also allege that the breach resulted in actual damages." Hutchinson v. Delaware Sav. Bank FSB, 410 F.Supp.2d 374, 383 (D..N.J. 2006) (citing 12 U.S.C. § 2605(f)(1)(A)). Here, the Plaintiffs have failed to allege that they suffered any damages as a result of the Defendants actions. As such, the Plaintiffs have failed to plead sufficient facts which state a claim pursuant to RESPA and we recommend that the claim should be dismissed.

### E. The Plaintiffs have failed to plead a cause of action to quiet title to their property.

Finally, the Plaintiffs brought an action to quiet title to their property requesting a decree declaring them the sole owners of any right, title, or interest in the property. The Defendants assert that they have not made a claim to title and have merely performed their duties as a mortgage servicer. (Doc. 8 at 7).

Pennsylvania Rule of Civil Procedure 1061 guides that an action to quiet title may be brought "where an action of ejectment will not lie, to determine any right, lien, title or interest in the land or determine the validity or discharge of any document, obligation or deed affecting any right, lien, title or interest in land." Pa.R.C.P No. 1061.

This claim fails for the same reasons that the above discussed claims fail. The Plaintiffs have failed to allege that the Defendants have stated any "right lien, title or interest in the land" or that there is any "document, obligation or deed affecting any right, lien, title or interest in land" in question here. Pa.R.C.P. No. 1061. The pleadings simply do not provide enough information for this Court to make an informed decision as to the nature of the relationship between the parties, what parties have an interest in the land, and who might have a lawful claim to the Plaintiffs' property. Without more information regarding the existence of any relationship between the parties, we are unable to quiet title to this piece of land. Accordingly, the Plaintiffs have failed to plead sufficient facts to support a claim for quiet title, and Defendants' motion to dismiss is granted.

We recognize that *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, See Fletcher-Hardee Corp. V. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Since the *pro se* complaint does not comply with pleading rules, and does not contain sufficient factual recitals to state a

claim upon which relief may be granted, or otherwise may seek relief which cannot be afforded to the plaintiff, these allegations should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

While dismissal of these claims is appropriate, it is recommended that the Court provide the Plaintiff with an opportunity to correct this potential deficiency in the *pro se* complaint, by dismissing these remaining allegations without prejudice to one final effort by the Plaintiff to comply with the rules governing civil actions in federal court.

### III. Recommendation

For the reasons set forth above, it is hereby RECOMMENDED that the Court GRANT the Defendant's Motion to Dismiss for failure to state a claim upon which relief can be granted. It is further RECOMMENDED that the Court grant the Plaintiffs leave to amend their complaint within thirty (30) days of the date of this Report and Recommendation.

The parties are further put on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 27th day of January, 2011.

                            *S/Martin C. Carlson*
                            **United States Magistrate Judge**