## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IAN JOBE AND CATHERINE JOBE, | : CIVIL NO. 3:10-cv-01710 |
| | : |
| *Plaintiffs*, | : (JUDGE A. RICHARD |
| | : CAPUTO) |
| v. | : |
| | : (MAGISTRATE JUDGE |
| BANK OF AMERICA, NATIONAL | : MARTIN C. CARLSON) |
| ASSOCIATION; BAC HOME LOANS | : |
| SERVICING, LP; WELLS FARGO BANK, | : ELECTRONICALLY FILED |
| N.A.; WELLS FARGO BANK, N.A., AS | : |
| TRUSTEE FOR THE BENEFIT OF THE | : |
| CERTIFICATE HOLDERS, PARK PLACE | : |
| SECURITIES, INC., ASSET-BACKED | : |
| PASS-THROUGH CERTIFICATES SERIES | : |
| 2005-WC2W; CERTIFICATE HOLDERS, | : |
| PARK PLACE SECURITIES, INC., ASSET- | : |
| BACKED PASS-THROUGH | : |
| CERTIFICATES SERIES 2005-WC2W and | : |
| JOHN DOE 1-10 | : |
| | : |
| *Defendants*. | : |

## BRIEF IN SUPPORT OF DEFENDANT,
## BANK OF AMERICA, N.A.'S MOTION TO DISMISS

Rather than assert any viable claim based on the facts or the law, Plaintiffs

Ian and Catherine Jobe, faced with the imminent dismissal of their Complaint yet

again make a strained attempt to fit their claims within some cognizable legal

framework by asserting facts which conflict with those alleged in their original

pleading and otherwise fail to suggest any tenable legal theories.  Despite their

repeated efforts to overcome the deficiencies identified by the Court in the January 27, 2011 Report and Recommendation and in the October 6, 2011 Memorandum, Plaintiffs have done little more than refile the same claims, with no meaningful amendment sufficient to state any factually supported or legally sound claim. Plaintiffs have not stated a claim in their Second Amended Complaint upon which relief can be granted, because they cannot.  As such, all of Plaintiffs' claims against Bank of America, N.A. ("BANA") and BAC Home Loans Servicing, LP must be dismissed.[2]

## I.   PROCEDURAL HISTORY AND FACTUAL BACKGROUND

On August 16, 2010, Plaintiffs filed their original Complaint, purporting to assert a number of claims apparently arising out of the servicing of the mortgage on their home at 16 Laurel Lane, Mount Pocono, Pennsylvania.  In their *pro se* original Complaint, Plaintiffs attempted to allege violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*; the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.;* and a claim to quiet title to the properly securing the loan pursuant to Pennsylvania Rule of Civil Procedure 1061.  Although Plaintiffs failed to explain the nature of their alleged relationship

---

[2] As of July 1, 2011, Bank of America, N.A. became the successor of BAC Home Loans Servicing, LP. As such, Bank of America, N.A. and BAC Home Loans Servicing, LP. will be referred to collectively as "Bank of America, N.A." or "BANA".

with Bank of America, N.A. and BAC Homes Loans Servicing, LP. (collectively, the "Bank of America" or "BANA" defendants"), Plaintiffs alleged that the BANA defendants were mortgage loan "servicers."  (Doc 1 at ¶ 62.)

On September 8, 2010, the BANA defendants filed a joint Motion to Dismiss the claims against them pursuant to Fed. R. Civ. P. 12(b)(6).   (See Docs. 7 and 8).  On January 27, 2011, Magistrate Judge Carlson issued a Report and Recommendation, recommending that the Court grant the Motion to Dismiss but allowing the Plaintiffs leave to amend their Complaint.  (Doc. 14).  Judge Carlson determined that the alleged violations of the Fair Debt Collection Practices Act in Counts I, II, and III of the Complaint should be dismissed because the Plaintiffs failed to allege any facts showing that the BANA defendants were acting as "debt collectors" under the FDCPA, as mortgage servicing companies, including the Defendants, are generally exempt from the FDCPA.  (See Doc 14  at 7-9.)  Even assuming the BANA defendants were considered debt collectors, and not servicers, Judge Carlson determined that Plaintiffs' claims pursuant to the FDCPA in Counts I and II of the Complaint should nonetheless be dismissed because the correspondence allegedly sent to the Plaintiffs by the BANA defendants was not an attempt to collect a debt.  (Id. at 8-9.)  Plaintiffs failed to allege facts, as required by Fed. R. Civ. P. 9(b), which would explain why they believed the actions of the BANA defendants were false, deceptive or misleading, as stated in Count III of the

3

Complaint, (Id. at 9), failed to allege that Plaintiffs first contacted the consumer reporting agency regarding disputed information on their credit report, as required by the FCRA, (Id. at 11), and denied that they ever had contact with the BANA defendants and failed to allege any actual damages, which would be necessary to state a claim under RESPA.   (Id. at 12-13.)    Finally, Magistrate Carlson recommended that Plaintiffs' claim for quiet title be dismissed because they failed to identify the nature of the relationship between the parties, which parties have an interest in the property, and who might have a lawful claim to the property, all of which would be required to state a claim for quiet title. (Id. at 14.)

Plaintiffs filed objections to Judge Carlson's Report and Recommendations on February 23, 2011 (Doc. 16) and an Amended Complaint on February 28, 2011. (Doc. 18).  The Amended Complaint was stricken as more fully explained in the Court's October 6, 2011 Memorandum for violation of Rule 15(a)(2) of the Federal Rules of Civil Procedure (See Doc. 27 at 4).   Despite the deficiencies in the Complaint, through its Memorandum the Court granted Plaintiffs "one final effort" to "comply with the appropriate pleading standards." (Id. at 11)    Plaintiffs subsequently filed their Second Amended Complaint on October 31, 2011.

In the Second Amended Complaint, which is a revised but nonetheless fatally flawed version of the original Complaint, Plaintiffs again attempt to state a

4

claim for Quiet Title and various violations of the Fair Debt Collection Practices Act.

Plaintiffs' Second Amended Complaint suffers from the same deficiencies as their original pleading.   Again, Plaintiffs acknowledge, as they must, that they have never entered into any agreement with Bank of America, N.A. or BAC Home Loans Servicing, LP.  (Id. at ¶ 23).  Plaintiffs admit that neither Bank of America, N.A. nor BAC Home Loans Servicing, LP owns or holds any promissory note or mortgage that encumbers Plaintiffs' property.  (Id. at ¶ 24).  In fact, Plaintiffs aver that they own their property free and clear of ***any encumbrances held by the BANA defendants***, but nonetheless attempt to state claims based upon a suggested borrower-lender relationship with the BANA defendants.  (Id. at ¶¶ 15; 19–24; 32–33).[3]

According to the Second Amended Complaint, on September 6, 2009, Plaintiff Catherine Jobe received correspondence, which Plaintiffs describe as an "Adjustable Rate Mortgage (ARM) Interest Rate Adjustment Notice", from BANA dated August 17, 2009.  (Doc. 28 at ¶ 25).  Plaintiffs allege that Catherine Jobe responded on September 29, 2009 by mailing a letter to BANA which they describe as a "Qualified Written Request Under RESPA" disputing the debt,

---

[3] Plaintiffs have previously – and unsuccessfully – litigated a quiet title dispute over the settlement on their current parcel of property in an attempt to rescind a mortgage obligation incurred in refinancing their home.  Jobe v. Argent Mortg. Co., LLC, 373 F.Appx. 260 (3d Cir. 2010).

stating that the account was in error, contending that any negative impact on their credit would violate RESPA and FCRA, and requesting particular information, including the current mortgagee, the current Note holder, the Pooling and Servicing Agreement and associated agreements, BANA's power of attorney, and a payoff statement.  (Id. at ¶ 26).

Plaintiff Catherine Jobe alleges that she sent a second letter to BANA on September 29, 2009 which she described as a "Notice Under Fair Debt Collection Practices Act Via U.S. Certified Mail, Return Receipt Requested."  (Id. at ¶ 28.) That second letter disputed "the claim" and requested "all information allowed under the FDCPA."  (Id.)  Plaintiffs allege that BANA failed to respond to either of the September 29 letters.  (Id. at ¶¶ 27, 29).[4]

According to the Second Amended Complaint, BANA sent Plaintiffs a letter on January 15, 2010 stating that the information requested in Plaintiffs' correspondence goes beyond that which is available through a qualified written request made pursuant to 12 U.S.C. § 2605.  (Doc. 28 at ¶ 30).  The January 15 letter further stated that the current owner of the note was Wells Fargo Bank, N.A. as trustee for the Benefit of the Certificate Holders, Park Place Securities, Inc., Asset-Backed Pass-Through Certificates Series 2005-WC2W.  (Id.)  BANA also

---

[4] From Plaintiffs' Second Amended Complaint, it appears that BANA responded.

enclosed in the January 15 letter a copy of the Mortgage and Payment History.

(Id.)

The Second Amended Complaint goes on to cite subsequent efforts by the BANA defendants to respond to Plaintiffs' requests for information. Specifically, Plaintiffs allege that between June 2010 and August 2010, they received or submitted the following documents:

1. On June 22, 2010, BANA mailed letters entitled "Home Loan Summary" and "Escrow Account Review" to Plaintiffs. (Id. at ¶¶ 36, 37).

2. On June 25, 2010, BANA mailed a letter to Plaintiffs, demanding payment on an allegedly defaulted alleged loan. (Id. at ¶ 38)

3. On June 30, 2010, BANA mailed a statement to the Plaintiff Catherine Jobe. (Id. at ¶ 39).

4. On July 6, 2010, Plaintiff Catherine Jobe mailed a letter to BANA entitled "Notice Under Fair Debt Collection Practices Act Via U.S. Certified Mail, Return Receipt Requested," which disputed the June 22, 2010 letter and requested all allowable information under the FDCPA. (Id. at ¶ 40).

5. On July 16, 2010, BANA responded to Plaintiffs enclosing all available loan documents, but the Plaintiffs allege BANA did not verify or include any proof or validation of the alleged debt. (Id. at ¶ 41).

6. On July 29, 2010, BANA sent Plaintiffs a letter entitled, "Home Loan Summary." (Id. at ¶ 42).

Plaintiffs then allege that a TransUnion credit report dated August 9, 2010, for Plaintiff Catherine Jobe showed "BAC Home Loans SERV LP #70918946 ...

Past Due: $25,254." (Doc. 28 at ¶ 43). However, an Experian credit report dated

August 10, 2010, for Plaintiff Ian Jobe stated that the mortgage was paid and

closed. (Id. at ¶ 44).

Plaintiffs also appear to claim that they have fully satisfied a mortgage that

encumbered their property at one time, but that inaccurate information regarding

the status of their mortgage may exist on some credit reports. In the initial

Complaint and now, Plaintiffs have acknowledged, however, that BANA's only

relationship to them, if any, is in <u>servicing</u> Plaintiffs' mortgage. (Doc. 1 at ¶ 62;

Doc. 8 at 4; Doc. 28 at ¶¶ 30-31.) The record is devoid of any allegations,

documents, or information to the contrary.

## II.   <u>QUESTIONS PRESENTED</u>

**A.   Should Defendants' Motion to Dismiss be granted where Defendants have not claimed any interest in Plaintiffs' property, such that Plaintiffs' claim to quiet title must fail as a matter of law?**

SUGGESTED ANSWER: Yes.

**A.   Should Defendants' Motion to Dismiss be granted where Plaintiffs have failed to plead sufficient facts to support their assertion that Defendants are "debt collectors" under the FDCPA?**

SUGGESTED ANSWER: Yes.

## III.   ARGUMENT

### A.   Rule 12(b)(6) Standard

A complaint should be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Pleading standards have recently shifted from simple notice pleading to a more heightened form, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss. Fowler v. UMPC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009). In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept all of the complaint's allegations as true. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3rd Cir. 1994). The court must also construe all reasonable inferences that can be drawn from those allegations in the light most favorable to the plaintiff. Id. However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Further, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).

In order to state a valid cause of action, a plaintiff must provide some factual grounds for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic

136045.00733/12147811v.1

Corp. v. Twombly, 550 U.S. 544 (2007). Twombly stressed that the allegations and the supporting facts in the complaint must raise plaintiff's right to relief to something higher than a speculative level. Id. The Supreme Court recently refined these pleading requirements, stating that the facts pled must amount to more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). Thus, when reviewing pleadings for sufficiency, trial courts should:

> Begin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Under Twombly and Iqbal, a well-pleaded complaint must contain more than mere legal labels and conclusions. Fowler instructs district courts to first separate the factual elements from the legal elements of a claim, where the district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Next, the district court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege

10

the plaintiff's entitlement to relief.  Instead, a complaint must show an entitlement with its facts.  <u>Fowler</u>, 578 F.3d at 210-11.

Under any formulation of this standard, the allegations in Plaintiffs' Second Amended Complaint remain insufficient to state viable claims upon which relief can be granted.  Accordingly, dismissal of the Second Amended Complaint is both warranted and appropriate.

**B.     Plaintiffs' Fail To State A Claim To Quiet Title**

Plaintiffs request a decree declaring them the sole owners of any right, title, or interest in the property, and seek this remedy through a claim to quiet title. Because, as Plaintiffs admit, the BANA defendants have not made a claim to title and have merely performed the duties of a mortgage servicer, Plaintiffs' claim must be dismissed.

An action to quiet title is appropriate only "where an action of ejectment will not lie, to determine any right, lien, title or interest in the land or determine the validity or discharge of any document, obligation or deed affecting any right, lien, title or interest in land."  Pa. R. Civ. P. 1061.   Critically, however, Plaintiffs still fail to allege that the BANA defendants asserted any "right, lien, title or interest in" Plaintiffs' property or that there exists any "document, obligation or deed affecting any right, lien, title or interest in land" which is in question.  Pa. R. Civ. P. 1061.  Plaintiffs allege only that the BANA defendants possess unidentified

11

documents that "relate" to Plaintiffs' "home loan." (Doc. 28 at ¶ 50). Accepting that averment as true, mere possession of unidentified loan documents will not save Plaintiffs' insufficient quiet title claim. The BANA defendants have not claimed **_any_** interest in Plaintiffs' property, nor do Plaintiffs make any such allegation.

Seemingly undeterred, Plaintiffs go a step further and baldly allege that "Defendants are among 'the Certificate holders', and/or have an ownership interest in Wells Fargo Bank N.A., …" (Doc. 28 at ¶ 51.) To the extent these allegations are directed at the BANA defendants, Plaintiffs' claims are made out of whole cloth. The BANA defendants do not claim **_any_** interest in Plaintiffs' property, and Plaintiffs cannot simply make up facts to overcome the deficiencies in their pleading, by stating that those allegations are "made upon information and belief." (Doc 28 at ¶ 1.)[5]

Instead, Bank of America, N.A. and BAC Home Loans Servicing, LP have merely performed their duties as a mortgage servicer, as Plaintiffs have recognized. (Doc. 1 at ¶ 62; Doc. 28 at ¶¶ 30-31). As a result, Plaintiffs' quiet title claim must be dismissed as to the BANA defendants.

---

[5] Even though they are proceeding per se, Plaintiffs must still abide by the requirements of Rule 11, F.R.C.P., and cannot simply attempt to support their claims with made up facts.

**C.**     <u>**Plaintiffs Have Failed To State A Claim Under The FDCPA.**</u>

In their Second Cause of Action at Counts I, II, III and IV, Plaintiffs state, again without any basis in law or fact, that Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq*. In Count I, Plaintiffs claim that BANA failed to disclose, within five days of the initial communication, that the Plaintiffs have a right to dispute their debt within 30 days, as required by 15 U.S.C. § 1692(a)(3). (Doc. 28 at ¶ 63). In Count II, Plaintiffs allege that BANA failed to disclose, within five days of the initial communication, the name of the creditor to whom the debt was allegedly owed, in violation of 15 U.S.C. § 1692(a)(2). (<u>Id.</u> at ¶ 68). In Count III, Plaintiffs allege that BANA contacted a member of Plaintiffs' family in an attempt to collect a debt, in violation of 15 U.S.C. § 1692(f) which prohibits using unfair and unconscionable means to collect a debt. (<u>Id.</u> at ¶¶ 72-74). And, in Count IV, Plaintiffs claim the aforementioned letters sent to Plaintiffs by BANA constitute "false, deceptive, and misleading representations in connection with the collection of the alleged debt" in violation of 15 U.S.C. § 1692(e). (<u>Id.</u> at ¶¶ 77).

Plaintiffs still have not pled facts sufficient to suggest that the BANA defendants were "debt collectors" or that the FDCPA otherwise applies. Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt

collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).  Since the FDCPA only applies to debt collectors, the legal and factual predicate to an FDCPA claim is an allegation that the defendant was acting as a "debt collector" within the meaning of the Act.  The FDCPA defines a "debt collector" as:

> any person who uses an instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. . . . such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C.§ 1692(a)(6).

Plaintiffs allege that by sending various letters and notices to their residence, the BANA defendants harmed them in violation of the FDCPA.  But, Plaintiffs still do not allege sufficient facts to support their contention that the BANA defendants were acting as "debt collectors."  (Doc. 28 at ¶ 56).  Plaintiffs claim that BANA mailed a letter to Plaintiffs on June 25, 2010 allegedly demanding "payment on an allegedly defaulted alleged loan." (Id. at ¶38).  Conveniently, Plaintiffs neither

attach the June 25, 2010 letter to the Second Amended Complaint nor provide sufficient facts regarding the June 25, 2010 letter which would enable the BANA defendants or the Court to determine whether, in fact, the BANA defendants were engaged in collection activity by sending this letter to Plaintiffs. Instead, Plaintiffs leave the BANA defendants and the Court to guess as to what the June 25, 2010 letter states.   Such a vague allegation that BANA sent a letter to Plaintiffs which allegedly demanding payment on an unidentified loan is not, by itself, enough to cure the deficiencies inherent in the Second Amended Complaint.   Rather, it is nothing more than a legal conclusion which, under <u>Twombly</u> and <u>Igbal</u>, is insufficient.

Further, Plaintiffs' bald assertion that "[N]either Defendant is the servicer of any obligation encumbering the Homestead" cannot save their claims and is wholly inconsistent with their prior admission that the BANA defendants, in fact, are servicers.  (Doc. 28 at ¶ 56).  <u>See</u>, <u>e.g.</u>, <u>Zedner v. United States</u>, 547 U.S. 489, 504 (2006) (judicial estoppels bars a party from taking a contradictory position to one it earlier asserted during the course of litigation).   Similarly, despite their vague allegations regarding the June 25, 2010 letter, Plaintiffs also acknowledge that "[N]either Defendant claims to be 'the creditor' and that '[N]either defendant claims to be owed any debt'" (Id. at ¶54).

Although a party is often permitted to plead allegations in the alternative in order to fully protect all of its potential claims and defenses, in this case, where the sufficiency of Plaintiffs' claims hinge on their ability to plead whether or not the BANA defendants are "debt collectors", the Plaintiffs cannot be permitted to have it both ways.  Either they can sufficiently allege that the BANA defendants acted as "debt collectors" who engaged in debt collection activity under the FDCPA or their claims must fail.  As drafted, the Second Amended Complaint does not sufficiently indicate how, if at all, the Bank of America defendants acted as "debt collectors."  If anything, Plaintiffs' continually vague pleading in their Second Amended Complaint merely highlights the fact, admitted by Plaintiffs, that the BANA defendants are not debt collectors (Id. at ¶54, ¶56).

Plaintiffs' failure to allege a single sufficient fact to support their claim that the BANA defendants were acting as "debt collectors" under the FDCPA (and Plaintiffs' previous admission that the BANA defendants are servicers) is a critical omission since courts have consistently held that "the FDCPA is not applicable to a creditor seeking to recover a debt owed to it." Conklin v. Purcell, Krug & Haller, No. 05-1726, 2007 WL 404047, *5 (M.D. Pa. Feb, 1, 2007); Police v. Nat'l Tax Funding, LP., 225 F.3d 379, 403 (3d Cir. 2000) ("Creditors – as opposed to 'debt-collectors' – generally are not subject to the FDCPA.") (internal citations omitted). This exemption applies equally to mortgage servicing companies such as

Defendants.  Conklin, 2007 WL 404047, at *5 (citations omitted); (Doc. 1 at ¶ 62).

Thus, on the face of the statute and their pleadings, the BANA defendants do not

fall within the statutory definition of "debt collector."  (Doc. 1 at ¶ 62).

While creditors and mortgage servicing companies are generally exempt

from the FDCPA, courts have acknowledged a very limited exception for mortgage

servicers who began servicing the loan after the mortgagee defaults on the

mortgage.  Conklin, 2007 WL 404047, at *5.  Here, however, where Plaintiffs

repeatedly allege that they:  (1) have no mortgage; (2) have remained current on

their mortgage; or (3) have fully satisfied their mortgage, this limited exception

does not apply.

The United States District Court for the Eastern District of Pennsylvania

addressed a similar situation in Rubenstein v. Dovenmuehle Mortgage, Inc., No.

09-721, 2009 WL 3467769 (E.D. Pa. Oct. 28, 2009).  In Rubenstein, the plaintiff

remained current with his mortgage and the court noted that "[the plaintiffs] have

argued that the mortgage was paid in full before Defendants ever owned and

serviced it, and therefore they can not - and, in fact, do not - contend that the

mortgage was in default."  Rubenstein, 2009 WL 3467769, at *4.  See also Dawson

v. Dovenmuehle Mortgage, Inc., No. 00-6171, 2002 WL 501499 (E.D. Pa. April 3,

2002) (where the Plaintiff alleged that he was current with his mortgage obligation,

the FDCPA did not apply).

As in <u>Rubenstein</u>, Plaintiffs allege that they are not only current on any mortgage obligation owed to the BANA defendants, but that no such obligation existed.  (Id. at ¶23).  In light of such an allegation, the FDCPA could not possibly apply.

Plaintiffs attempt to overcome the hurdle outlined in <u>Rubenstein</u> by alleging that "any alleged loan that Bank of America claims is owed to them by Plaintiffs, was in default at the time Bank if America acquired it." (Id. at ¶57).   Such a vague allegation, when taken into context with Plaintiffs' allegations that there is no debt to collect (Doc. 28 at ¶¶ 19-24; 55-57; 80) nor any default (CITE), does not cure the deficiencies in the Second Amended Complaint.  Thus, as noted in <u>Rubenstein</u>, Plaintiffs have failed to adequately pled facts which state a claim under the FDCPA.

Moreover, even if the BANA defendants were considered debt collectors, and not servicers, Plaintiffs' claims pursuant to the FDCPA should still be dismissed.   The FDCPA requires that the initial communication between the consumer and debt collector be "in connection with the collection of any debt." 15 U.S.C. § 1692g(a).  The correspondence allegedly sent to Plaintiffs by BANA was not an attempt to collect a debt.  Rather, it was simply performing the duties of a mortgage servicer by providing information to Plaintiffs regarding their account. (Doc. 28 at ¶¶25, 49 and 74).

Finally, Plaintiffs do not allege facts which would explain why they believe the actions of the Defendants were false, deceptive or misleading, as alleged in Count IV.  Pursuant to Rule 9(b), a plaintiff averring a claim in fraud must specify "the who, what, when, where, and how: the first paragraph of any newspaper story."  Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir. 1999) (quoting DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990)).  "Although Rule 9(b) falls short of requiring every material detail of the fraud such as date, location, and time, plaintiffs must use 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'"  In re Rockefeller Ctr. Props. Secs. Litig., 311 F.3d 198, 216 (3d Cir. 2002) (quoting In re Nice Sys., Ltd. Secs. Litig., 135 F.Supp.2d 551, 577 (D.N.J. 2001).  Plaintiffs' general assertions that the BANA defendants' actions were false, deceptive or misleading as alleged in Count IV do not meet the pleading standards required under Rule 9 for fraud claims.  Thus, the Plaintiffs have failed to plead facts which state a claim pursuant to the FDCPA and these claims must be dismissed.

## IV.   CONCLUSION

For all the reasons stated above, Defendants Bank of America, N.A. and BAC Home Loans Servicing, LP request that the Court grant their Motion and dismiss Plaintiffs' claims with prejudice.  Plaintiffs have already been afforded an opportunity to amend their pleading.  Granting further leave would be both futile

136045.00733/12147811v.1

and result in undue delay in the resolution of these unfounded claims. <u>See</u>

<u>generally</u> <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004).

Respectfully submitted,

**BLANK ROME LLP**

/s/ Kevin C. Rakowski
Kevin C. Rakowski, Esquire
Attorney ID No. 80739
Blank Rome LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
(215) 569-5500
(215) 569-5555 (facsimile)
Attorneys for Bank of America, N.A.

Dated:  November 21, 2011

20

## **CERTIFICATE**

Pursuant to Fed. R. Civ. P. 11 and Local Rule 7.8(b), the undersigned hereby certifies that the foregoing brief contains 4,695 words.


/s/ Kevin C. Rakowski
Kevin C. Rakowski

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the

foregoing Brief was served by United States mail this 21st day of  November,

2011, as follows:


Ian Jobe and Catherine Jobe
16 Laurel Lane
Mount Pocono, PA 18344



/s/ Kevin C. Rakowski
Kevin C. Rakowski