## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IAN JOBE and | : | |
| CATHERINE JOBE, | : | Civil No. 3:10-CV-1710 |
| | : | |
| Plaintiffs | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| BANK OF AMERICA, N.A., et al., | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

Plaintiffs Ian and Catherine Jobe, a husband and wife proceeding *pro se*, first initiated this action by filing a complaint on August 16, 2010, alleging that Bank of America, National Association, and BAC Home Loans Servicing, LP (collectively, the "Bank of America Defendants"), along with a number of other named Defendants, violated the Fair Debt Collections Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA"), the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. ("FCRA"), and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA"). Plaintiffs also brought a claim to quiet title to certain real property located at 16 Laurel Land, Mount Pocono, Pennsylvania, where Plaintiffs maintain their home, pursuant to Pennsylvania Rule of Civil Procedure 1061. (Doc. 1)

On October 6, 2011, the District Court entered an order dismissing the Jobes'

initial complaint for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure, but provided the Plaintiffs with leave to amend their

complaint within 30 days. (Doc. 28)  In response, the Plaintiffs submitted an

amended complaint on October 31, 2011. (Doc. 28)  In the amended complaint, have

reduced their claims to two general legal theories of relief.  In the first, Plaintiffs

continue their efforts to quiet title to the property.  (Id., "First Cause of Action".)  In

the second count, Plaintiffs have largely repeated and built upon their allegations that

the Defendants violated the FDCPA in their efforts to collect a debt secured by the

property, which Plaintiffs insist they do not owe.[1]  (Id., "Second Cause of Action".)

Now pending before the Court is Defendants' motion to dismiss the amended

complaint for failure to state a claim. (Doc. 29)  In the motion, Defendants argue that

Plaintiffs' efforts to amend their complaint have proven to be unavailing, and

---

[1] In their brief opposing the Defendants' motion to dismiss the amended complaint, the Plaintiffs also suggest that they brought a claim for alleged RESPA violations. (Doc. 32, at 2)  Plaintiffs note that five paragraphs in the amended complaint assert the elements of a claim for RESPA violations.  (Id.)  We have reviewed the amended complaint, the claims for relief asserted therein, and the five paragraphs that the Plaintiffs contend reveal a claim for one or more RESPA violations.  Upon consideration, we agree with Defendants that the Plaintiffs have not asserted a claim under RESPA, and we further find that even if the Plaintiffs had asserted a claim for RESPA, the factual allegations offered in support of such a claim are plainly insufficient to support such a cause of action.

maintain that Plaintiffs have not alleged facts necessary to state a claim for quiet title or for damages or injunctive relief under the FDCPA.  The motion is fully briefed and has been referred to the undersigned for purposes of issuing this report and recommended disposition.  For the reasons that follow, we continue to find that Plaintiffs have failed to state a claim under either theory of relief asserted in the amended complaint, and we therefore recommend that the Court dismiss the amended complaint and close this case.

## II.   __BACKGROUND__

Ian and Catherine Jobe are the owners of a parcel of real property in Monroe County, Pennsylvania, located at 16 Laurel Lane in Mount Pocono, Pennsylvania. (Doc. 28, Am. Compl. ¶ 1.)  The Jobes' relationship with the various Defendants is unclear from the allegations in the amended complaint.  At one point, Plaintiffs allege that a number of John Doe Defendants are the holders of one or more promissory notes encumbering the property.  (Id. ¶ 15.)  At another place in the amended complaint, the Plaintiffs aver that "Defendants are not the owner or holder of any Promissory Note or Mortgage encumbering the Homestead." (Id. ¶ 24.)  Thus, on the one hand, Plaintiffs seem to be admitting that they have given one or more promissory notes to certain of the Defendants, and that the promissory notes are secured by a mortgage on the property.  On the other hand, Plaintiffs appear to be

contradicting this allegation, by maintaining that none of the Defendants own or hold any notes or mortgages encumbering the property.[2]  It does appear reasonably clear, however, that the Plaintiffs are maintaining that the Bank of America Defendants do not hold any notes or mortgages relating to the property.

Notwithstanding this confusion, Plaintiffs then allege that on September 6, 2009, Plaintiff Catherine Jobe received correspondence that they described as an "Adjustable Rate Mortgage (ARM) Interest Rate Adjustment Notice," dated August 17, 2009.  (Id. ¶ 25.)  In response, on September 29, Mrs. Jobe claims that she mailed a letter to Bank of America Home Loans Servicing LP, which she titled a "Qualified Written Request Under REPSA [sic]," disputing the debt, stating that the account was an error, and further contending that any negative impact on their credit would violate both RESPA and the FCRA.  (Id. ¶ 26.)  Also on September 29, 2009, Mrs. Jobe claims that she sent a letter to Bank of America Home Loans that she described as a "Notice Under Fair Debt Collection Practices Act Via U.S. Certified Mail, Return Receipt Requested," which disputed the claim and requested all information

---

[2]  As we did in our previous report, we note that this is not Plaintiffs' first foray into federal court on real estate disputes relating to this parcel.  The Plaintiffs have previously – and unsuccessfully – litigated a quiet title dispute over the settlement on their current parcel of property in an attempt to rescind a mortgage obligation incurred in refinancing their home.  See Jobe v. Argent Mortgage Co., LLC, 373 F. App'x 260 (3d Cir. 2010).

allowable under the FDCPA.  (Id. ¶ 30.)  Plaintiffs allege that Bank of America failed to respond to either of these letters.  (Id. ¶¶ 27, 29.)

According to the amended complaint, on January 15, 2010, a lawyer for BAC Home Loans Servicing, LP, a subsidiary of Bank of America, N.A., wrote a letter to Mrs. Jobe stating that the information requested in her correspondence went beyond that which is available through a qualified written request made pursuant to 12 U.S.C. § 2605.  (Id. ¶ 30.)  In addition, the letter advised that Wells Fargo, N.A. was the current holder of the note, as trustee for the Benefit of Certificate Holders, Park Place Securities, Inc., Asset-Backed Pass-Through Certificates Series 2005-WC2W.  (Id.) Enclosed with the letter was a copy of the mortgage and payment history "during BAC Home Loans' servicing," but otherwise "gave no information."  (Id.)  Plaintiffs allege that BAC Home Loans did not actually begin servicing the mortgage on the property until June 22, 2010.  (Id. ¶ 31.)

Plaintiffs aver that a search of the county recorder's office indicated that the Jobes are the owners of record of the property, and that there is no mortgage or assignment to Wells Fargo Bank, N.A., or to Bank of America, N.A., or to BAC Home Loans Servicing, LP.  (Id. ¶ 32.)  Apparently on the basis of this records search, the Plaintiffs allege on information and belief that none of these banking entities is the current owner of any note encumbering the property.  (Id. ¶¶ 33-35.)

Nevertheless, Plaintiffs claim that on June 22, 2010, BAC Home Loans Servicing, LP sent them a letter titled "Home Loan Summary," and demanded payment on an allegedly defaulted loan.  (Id. ¶ 36.)  This letter was followed by additional correspondence on June 22, 25, and 30 demanding payment, providing escrow information, and containing an account statement.  (Id. ¶¶ 37-39.)  Mrs. Jobe responded with a letter of her own to BAC Home Loans entitled "Notice Under Fair Debt Collection Practices Act Via U.S. Certified Mail, Return Receipt Requested," which disputed the June 22, 2010, letter and requested all allowable information under the FDCPA.  (Id. ¶ 40.)  On July 16, 2010, BAC Home Loans responded to Plaintiffs enclosing all available loan documents, but Plaintiffs allege that they did not verify or include any proof or validation of the alleged debt.  (Id. ¶ 41.)  On July 29, 2010, BAC Home Loans sent Plaintiff a letter entitled "Home Loan Summary." (Id. ¶ 42.)  Plaintiffs then allege that a TransUnion credit report dated August 9, 2010, for Catherine Jobe showed "BAC Home Loans SERV LP #70918946 . . . Past due: $25,254."  (Id. ¶ 43.)  An Experian credit report dated August 10, 2010, for Ian Jobe stated that the mortgage was paid and closed.  (Id. ¶ 44.)

Thus, the Plaintiffs have asserted that none of the financial institutions named as Defendants hold a note secured by a mortgage on the Plaintiff's property, although they have also alleged that John Doe Defendants are noteholders with an interest in

the property.   However, Plaintiffs appear to have acknowledged that Bank of America's only relationship to them is in servicing the mortgage on the property, and there are no allegations in the complaint to the contrary.  (Id. ¶¶ 30-31.)  It is on the basis of these limited factual averments that Plaintiffs assert a claim to quiet title and for alleged violations of the FDCPA on the part of the Bank of America Defendants.

## III.   STANDARD OF REVIEW

Defendants have moved to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Thus, as they did successfully with respect to Plaintiffs' initial complaint, Defendants argue that Plaintiffs' amended complaint must be dismissed for failure to state a claim upon which relief can be granted with respect to either of the claims set forth in the pleading.

When ruling upon a motion to dismiss under Rule 12(b)(6), a court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally constrained in its review to the facts alleged in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman,

38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require that a complaint provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  The plaintiff must allege facts that, if true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a) (providing that a complaint must include a short and plain statement of the claim showing that the pleader is entitled to relief:); Twombly, 550 U.S. at 555 (holding that plaintiffs are required to allege facts sufficient to "raise a right to relief above the speculative level").

In Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950.  According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949.  Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth. While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations.  When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain

more than mere legal labels and conclusions.  Rather, a complaint must recite factual

allegations sufficient to raise the plaintiff's claimed right to relief beyond the level

of mere speculation.  As the United States Court of Appeals for the Third Circuit has

stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis. First, the
> factual and legal elements of a claim should be separated. The District
> Court must accept all of the complaint's well-pleaded facts as true, but
> may disregard any legal  conclusions.  Second, a District Court must
> then determine whether the facts alleged in the complaint are sufficient
> to  show that the plaintiff has a "plausible claim for relief." In other
> words, a complaint must do more than allege the plaintiff's entitlement
> to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

The foregoing principles guide our review of the amended complaint, and

compel us to recommend that the motion to dismiss be granted because the Plaintiffs

have failed to allege facts that set forth a plausible claim for relief either to quiet title

in the property, or for asserted violations of the FDCPA.  Furthermore, although

Plaintiffs now claim to have also brought claims for relief for alleged violations of

RESPA, we find that such claims are not properly alleged in the amended complaint,

and even if they had been set forth in the pleading, the facts alleged fail to support a

claim under that statute.

IV.   **DISCUSSION**

    A.    **Plaintiffs Fail to State a Claim to Quiet Title.**

In their first claim, Plaintiffs request that the Court issue an order declaring

them to be the sole owners of any right, title, or interest in the property, and they seek

this remedy by making a claim to quiet title pursuant to Pennsylvania Rule of Civil

Procedure 1061.[3]

This state rule of procedure provides, in relevant part, as follows:

---

[3] Notably, in a separate legal proceeding, the Plaintiffs unsuccessfully brought an action to quiet title as part of an action to rescind their mortgage obligations to their lender on the basis that the lender failed to comply with the Truth in Lending Act, 15 U.S.C. §§ 1601 et seq. ("TILA").  The Third Circuit found that the Plaintiffs' claims for TILA violations failed, and found further that rescission would nevertheless have been inappropriate because the Plaintiffs admittedly had not made payments on the loan advanced to them, and in fact had not made any payments for more than four years.  Jobe v. Argent Mortgage Co., LLC, 373 F. App'x 260, 262 (3d Cir. Apr. 2, 2010).  The Third Circuit thus held that the Plaintiffs' efforts to quiet title were necessarily unavailing, because the Plaintiffs could not validly rescind their mortgagee's interest in the property, and thus could not attempt to quiet title.

(b)   The action [to quiet title] may be brought

   (1)   to compel an adverse party to commence an action of ejectment;

   (2)   where an action of ejectment will not lie, to determine any right, lien, title or interest in the land or determine the validity or discharge of any document, obligation or deed affecting any right, lien, title or interest in land;

   (3)   to compel an adverse party to file, record, cancel, surrender or satisfy of record, or admit the validity, invalidity or discharge of, any document obligation or deed affecting any right, lien, title or interest in land; or

   (4)   to obtain possession of land sold at a judicial or tax sale.

Pa. R. Civ. P. 1061.  Thus, the purpose of an action to quiet title is to resolve conflict over interests in property.  Nat'l Christian Conference Center v. Schulykill Tp., 597 A.2d 248 (Pa. Commw. Ct. 1991).

   Upon review of the allegations in the amended complaint, we continue to find that the Plaintiffs have not sufficiently alleged that the Bank of America Defendants have asserted any "right, lien, title or interest in" the Plaintiffs' property, or that there exists any "document, obligation or deed affecting any right, lien, title or interest in land" in question.  Pa. R. Civ. P. 1061.  Instead, the Plaintiffs have alleged simply that the Bank of America Defendants are in possession of unidentified documents that may relate to the Plaintiffs' home loan.  (Doc. 28 ¶ 50.)  Although Plaintiffs have claimed that "Defendants are among 'the Certificate holders', and/or have an

11

ownership interest in Wells Fargo Bank N.A. . . . ." (Doc. 28 ¶ 51), we do not find that

these allegations – made only on information and belief, and of dubious relevance –

could conceivably permit Plaintiffs to maintain this action even if they are accepted

as true.   Nothing in the amended complaint, taken as a whole, or in Defendants'

briefs, suggest that the Bank of America Defendants have any interest in the

Plaintiffs' property.   Instead, Plaintiffs have alleged only that the Bank of America

Defendants have performed mortgage servicing with respect to the property, which

does not provide a basis for a quiet title action.[4]   We have found no case law

suggesting that a landowner can maintain a cause of action against a mortgage

servicer who has no other relationship or interest in the property other than as a

servicer of a mortgage.   Accordingly, we continue to find that Plaintiffs have failed

_____

[4] As we previously observed, creditors and mortgage servicing companies
are generally exempt from the FDCPA.  Pollice v. Nat'l Tax Funding, LP, 225
F.3d 379, 403 (3d Cir. 2000) ("Creditors – as opposed to 'debt-collectors' –
generally are not subject to the FDCPA."); Conklin v. Purcell, Krug & Haller, No.
05-1726, 2007 WL 404047, *5 (M.D. Pa. Feb. 1, 2007).  Although some courts
have recognized a very limited exception to this rule for mortgage servicers who
began servicing the loan after a default on the mortgage, Conklin, 2007 WL
404047, *5, we find this exception inapplicable based on the allegations in the
amended complaint.  Plaintiffs insist throughout this pleading that none of the
Defendants has a mortgage on the property, and the Plaintiffs claim either to be
current on their mortgage or, indeed, to have satisfied it entirely.  Thus, we agree
with Defendants that the limited exception does not apply and that Plaintiffs have
"plead themselves out of the statute."  (Doc. 37, at 6 n.3)

to state a claim to quiet title to the property, and will recommend that this claim be dismissed.

**B.     Plaintiffs Fail to State a Claim for FDCPA Violations.**

In their "Second Cause of Action," the Plaintiffs claim that Defendants violated the FDCPA.  In Count I, Plaintiffs allege that Bank of America failed to disclose, within five days of the initial communication, that the Plaintiffs had the right to dispute their debt within 30 days, as required by 15 U.S.C. § 1692(a)(3).  (Doc. 28, Am. Compl. ¶ 63)  In Count II, Plaintiffs allege that Bank of America failed to disclose within five days of the initial communication the name of the creditor to whom the debt was allegedly owed, in violation of 15 U.S.C. § 1692(a)(2).  (Id. ¶ 68.) In Count III, Plaintiffs claim that Bank of America contacted a member of Plaintiffs' family in an effort to collect a debt, which Plaintiffs claim was an unfair and unconscionable means to collect a debt, in violation of 15 U.S.C. § 1692(f).  (Id. ¶¶ 72-74.)  Finally, in Count IV, Plaintiffs claim that the correspondence Bank of America sent to them constitute "false, deceptive, and misleading representations in connection with the collection of the alleged debt," in violation of 15 U.S.C. § 1692(e).  (Id. ¶ 77.)

We remain unable to find that Plaintiffs have pleaded facts that would permit us to find that the FDCPA applies here.  Congress enacted the FDCPA to "eliminate

abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).  As we explained in our prior report and recommendation addressing Plaintiffs' initial complaint, because the FDCPA only applies to debt collectors, the legal and factual predicate to an FDCPA claim is an allegation that the Defendant was acting as a "debt collector" within the meaning of the Act.  In this regard, the FDCPA defines a "debt collector" as:

> any person who uses an instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another . . . .the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. . . . such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692(a)(6).

In this case, Plaintiffs allege that the Bank of America Defendants violated the FDCPA by sending them correspondence and notices to their residence.  However,

despite their amended pleading containing additional factual averments, Plaintiffs still do not allege facts sufficient to support their contention that the Bank of America Defendants were acting as "debt collectors" within the meaning of the Act. (Doc. 28, Am. Compl. ¶ 56)  Instead, the amended complaint is a mash of contradictory, conclusory allegations that appear to be made simply in an effort to avoid the fact that the law the Plaintiffs are attempting to invoke simply does not apply to their dispute with the Bank of America Defendants.

Thus, in an apparent effort to address the Court's prior finding that the Bank of America Defendants could not be liable under the FDCPA as "debt collectors" simply by acting as mortgage servicers or as parties attempting to collect on debts owed to them, based on the facts alleged, the Plaintiffs now claim that "neither Defendant is the servicer of any obligation encumbering the Homestead." (Doc. 28, Am. Compl. ¶ 56)  But even if the Plaintiffs' seemingly contradictory allegations throughout this action could be viewed simply as alternative allegations, it is nonetheless impossible for the Court to look past the fact that Plaintiffs have maintained throughout this case either that no mortgage obligation existed at all, or that they were otherwise current on their mortgage. (Id. ¶¶ 19-24; 28; 55-57; 80).

As we previously noted, the United States District Court for the Eastern District of Pennsylvania addressed a similar situation in Rubenstein v. Donenmuehle

Mortgage, Inc., No. 09-721, 2009 WL 3467769 (E.D. Pa. Oct. 28, 2009). In that case, the plaintiff had remained current with his mortgage, and the court noted that "[the Plaintiffs] have argued that the mortgage was paid in full before Defendants ever owned and serviced it, and therefore they cannot – and, in fact, do not – contend that the mortgage was in default." Rubenstein, 2009 WL 3467769, at *4. See also Dawson v. Dovenmuehle Mortgage, Inc., No. 00-6171, 2002 WL 501499 (E.D. Pa. Apr. 3, 2002) (where the plaintiff alleged that he was current with his mortgage obligation, the FDCPA did not apply). Since we continue to find that the Plaintiffs have alleged either that no mortgage existed, or that they were current with any obligation they may have had, we continue to find that the Plaintiffs have not pleaded adequate facts to state a claim under the FDCPA.

Furthermore, notwithstanding the additional allegations set forth in the amended complaint, we continue to find that Plaintiffs have not alleged facts that would explain why they believe Defendants' action were false, deceptive, or misleading. This remains a significant defect in the amended complaint for the reasons we explained in our earlier report and recommendation, setting forth a Plaintiff's burden when pleading claims of fraudulent or misleading conduct. (Doc. 14, at 9) Plaintiffs have not corrected this defect in the original complaint, and we continue to find that they have provided insufficient allegations to support their

claims that Defendants engaged in false, deceptive, or misleading conduct in violation of the FDCPA.

For the foregoing reasons, we recommend that Plaintiffs' claims for violations of the FDCPA be dismissed.

### C.     Plaintiffs Have Not Brought a Claim for RESPA Violations.

Plaintiffs argue that they brought a claim for unidentified RESPA violations in the amended complaint, and urge the Court to deny the motion dismiss on the grounds that Defendants failed to respond to this alleged claim in their brief.  (Doc. 32, at 2)  Upon review of the amended complaint, we disagree that it can reasonably be read to assert a claim for RESPA violations and, even if it could be, the pleading contains insufficient allegations to support such a claim.

Plaintiffs claim that "the elements" of a RESPA claim are contained in paragraphs 25-27 and 30-31 of the amended complaint.  These allegations include: an averment that Catherine Jobe received a letter from Bank of America on September 6, 2009, allegedly notifying her of an adjustable rate mortgage interest rate adjustment (Doc. 28, Am. Compl. ¶ 25); that Mrs. Jobe mailed a letter to Bank of America entitled "Qualified Written Request Under RESPA" (id. ¶ 26); Bank of America Home Loans failed to respond timely to this letter (id. ¶ 27); that a lawyer for Bank of America Home Loans wrote to Mrs. Jobe on January 15, 2010, stating

17

that, *inter alia*, the information requested in her letter went beyond that which is available through a qualified written request under RESPA (id. ¶ 30); and an allegation that Bank of America Home Loans did not begin servicing the Jobes' mortgage until June 22, 2010 (id. ¶ 31). We also note that in addition to these five paragraphs, Plaintiffs also claim to be seeking "[a]n award of judgment entitling Plaintiffs to all remedies set forth in 12 U.S.C. § 2607 . . . that equitably and reasonably flow from Defendants' breaches of federal law and the obligations that arise therefrom". (Id. ¶ 90.)

We find that these five paragraphs, and a bald request for "all remedies" that might be available to claimants prevailing on claims for RESPA violations, are insufficient to state a claim.

Congress enacted RESPA to protect consumers from excessive costs and abusive practices that had developed in the real estate settlement industry. 12 U.S.C. § 2601. RESPA requires that "servicer[s] of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other persons" as well as mandating certain time restrictions and content requirements. 12 U.S.C. § 2605(b). RESPA also allows consumers to access information regarding their settlement and mortgage obligations by implementing a

duty to respond to borrower inquiries within a certain time frame and with a sufficiently detailed response.  12 U.S.C. § 2605(e).

Although Plaintiffs contend that they made a claim for violations of this statute, the nature of the violations alleged remains entirely unclear.  At most, it appears Plaintiffs may be complaining that Defendants failed to respond timely to their alleged "Qualified Written Request Under RESPA," in which Catherine Jobe claims to have disputed an unidentified debt, in violation of section 2605(e).  Notably, Mrs. Jobe claims that in her correspondence she informed Bank of America of her "belief that the account is in error," but nevertheless threatened Bank of America that any negative credit reporting would be deemed a RESPA and FCRA violation, and requesting information about the noteholder and mortgage, all while contending the account was "in error".  (Doc. 28, Am. Compl. ¶ 26)  Other than this allegation, we cannot discern Plaintiffs' basis for claiming that the Defendants violated provisions of RESPA in their correspondence, or in their failure to respond.

Furthermore, "alleging a breach of RESPA duties alone does not state a claim under RESPA.  Plaintiffs must, at a minimum also allege that the breach resulted in actual damages."  Hutchinson v. Delaware Sav. Bank FSB, 410 F. Supp. 2d 374, 383 (D.N.J. 2006) (citing 12 U.S.C. § 2605(f)(1)(A)).  In this case, Plaintiffs have not adequately alleged that they suffered any damages as a result of Defendants' alleged

19

actions.  Accordingly, we continue to find that Plaintiffs have failed either to plead

a cause of action under RESPA, or that they have failed to plead sufficient facts that

could state a claim for relief under RESPA, and we therefore recommend that any

RESPA claim that Plaintiffs believe that they brought in the amended complaint also

be dismissed.

## V.    <u>RECOMMENDATION</u>

Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED

THAT Defendants' motion to dismiss Plaintiffs' amended complaint (Doc. 29) be

GRANTED and that the case be closed.  Plaintiffs have previously been given an

opportunity to amend their claims in this case, and their efforts have been unavailing.

We therefore recommend that this action be dismissed with prejudice, and without

further leave to amend.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28   U.S.C.  §  636  (b)(1)(B)  or  making  a  recommendation  for  the
disposition of a prisoner case or a habeas corpus petition within fourteen
(14) days after being served with a copy thereof. Such party shall file
with the clerk of court, and serve on the magistrate judge and all parties,
written objections which shall specifically identify the portions of the
proposed findings, recommendations or report to which objection is
made and the basis for such objections. The briefing requirements set
forth in Local Rule 72.2 shall apply. A judge shall make a de novo
determination of those portions of the report or specified proposed

findings or recommendations to which objection is made and may
accept, reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge. The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the
magistrate judge, making his or her own determination on the basis of
that record. The judge may also receive further evidence, recall
witnesses or recommit the matter to the magistrate judge with
instructions.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated:        April 20, 2012