**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IAN and CATHERINE JOBE,** : | |
| **Plaintiffs,** : | **CIVIL ACTION NO. 3:10-1710** |
| v. : | **(MANNION, D.J.)** |
| | **(CARLSON, M.J.)** |
| **WELLS FARGO BANK, N.A.,** *et al.*, : | |
| **Defendants** : | |

**MEMORANDUM**

Pending before the court is a report and recommendation filed by Judge Carlson on December 23, 2013, (Doc. No. 77), to which the plaintiffs have filed an objection. (Doc. No. 78). In his report, Judge Carlson recommends that defendants' motion for summary judgment, (Doc. No. 53), should be granted. The plaintiffs object to four determinations made by Judge Carlson: (1) that a purported copy of a promissory note is admissible and therefore creates a genuine issue of material fact as to the assignment of said note; (2) the determination that an assignment of mortgage was self-authenticating was erroneous; (3) the expert opinion of Javier Toboas creates a genuine issue of material fact for trial; and (4) the determination that the defendants are holders in due course and have the rights and privileges stemming from being a holder in due course.

**I. FACTUAL BACKGROUND**

On March 25, 2005, Plaintiff Catherine Jobe executed an adjustable

rate note in the sum of $248,800 in favor of Argent Mortgage Company, LLC. (Doc. No. 54, Exh. A). On that same date, the plaintiffs both signed and executed a mortgage with an adjustable rate rider in favor of Argent encumbering property at 16 Laurel Lane, Mount Pocono in Monroe County Pennsylvania. (Id., Exh. B). That Mortgage was subsequently recorded on April 7, 2005 in Record Book 2221, page 3725 by the Monroe County Recorded of Deeds. On April 5, 2005, Argent executed an assignment of mortgage to Wells Fargo Bank, N.A. as Trustee for the certificate of holders of Asset-Backed Pass-Through Certificates, Series 2005-WCW2. (Id., Exh. C). The assignment of the mortgage was not recorded until August 20, 2013. (Id., Exh. D). There is no dispute that the note and mortgage in favor of Argent were validly executed. (Id., Exh. X).

The promissory note was subsequently assigned, in blank, by Argent to Wells Fargo. (Id., Exh. A). The physical note is now held by Wells Fargo's custodian, Select Portfolio Servicing, Inc., and a copy of the note with the assignment have been produced by the defendant. (Doc. No. 54). The parties dispute when this assignment occurred.

Sometime later, the plaintiffs mortgage fell into default. (Id., Exh. X). On September 29, 2009, the plaintiffs sent a letter to their servicing bank, Bank of America, requesting information related to the loan, including the current owner of the note. (Doc. No. 63, Exh. D). Through counsel, Bank of America replied on January 15, 2010, stating that Wells Fargo, N.A. was the current

holder of the note. (Id., Exh. E). In August 2010, the plaintiffs were sent a copy of the note from Bank of America that did not contain any endorsements or assignments. (Id., Exh. F). There is no indication from Bank of America or any other person with personal knowledge about this copy, including when it was made and whether it represents a copy of the original note, or a copy of a copy.

The plaintiffs have also produced an expert opinion from Javier Taboas, a purported expert in mortgage fraud and the forensic analysis of notes and mortgages. (Doc. No. 65). Regarding the validity and timing of the endorsement, he opines "[t]here is no way to determine if the Lender actually held ownership of the Borrowers' loan at the time the instant action commenced." He further concludes that more discovery, including the depositions of Argent's former president and executive vice president, is necessary. (Id.). He notes that the Pooling and Servicing Agreement that governs the trust in which the note was placed in June 2005 requires an assignment have additional endorsements if it was endorsed after the trust closed. He opines that the trust may have never been validly created and there could be possible tax consequences. He finally states that significant discovery is necessary to bolster his opinions, including review of the original note, depositions, and access to various trust documents. (Id.).

## II. PROCEDURAL BACKGROUND

This case commenced on August 16, 2010 when the plaintiffs filed their complaint *pro se*. (Doc. No. 1). After a motion to dismiss was granted, (Doc. No. 45), the sole surviving claim is an action to quiet title. Plaintiffs are now represented by counsel. (Doc. No. 49). The discovery period in this case closed on August 19, 2013, nearly three years after the commencement of this suit. (Doc. No. 48). After the close of discovery, the defendants filed a motion for summary judgment, statement of facts, and supporting materials on September 9, 2013. (Doc. No. 53, 54, 55, and 56). Plaintiffs filed their brief in opposition, statement of facts, and supporting materials on September 30, 2013. (Doc. No. 61, 62, 63, and 64). The defendants filed a reply brief on October 17, 2013. (Doc. No. 68). The plaintiffs moved to file a sur-reply brief that was granted, (Doc. No. 71), and they filed an additional brief on November 19, 2013. (Doc. No. 72). Having reviewed the parties' four briefs and supporting documents, Judge Carlson issued his report on December 23, 2013 recommending the defendants' motion for summary judgment be granted. (Doc. No. 77). The plaintiffs filed objections to the report and recommendation on January 9, 2014. (Doc. No. 78). Having canvassed the five memoranda of law and supporting materials, this matter is ripe for the court's decision.

**III. STANDARD OF REVIEW**

When objections are timely filed to the report and recommendation of a magistrate judge, the district court must review *de novo* those portions of the report to which objections are made. 28 U.S.C. §636(b)(1); *Brown v. Astrue,* 649 F.3d 193, 195 (3d Cir. 2011). Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper*. Rieder v. Apfel,* 115 F.Supp.2d 496, 499 (M.D.Pa. 2000) (*citing United States v. Raddatz,* 447 U.S. 667, 676 (1980)).

For those sections of the report and recommendation to which no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; see also *Univac Dental Co. v. Dentsply Intern., Inc.,* 702 F.Supp.2d 465, 469 (M.D.Pa. 2010) (*citing Henderson v. Carlson,* 812 F.2d 874, 878 (3d Cir. 1987) (explaining judges should give some review to every report and recommendation)). Nevertheless, whether timely objections are made or not, the district court may accept, not accept or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1); Local Rule 72.31.

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file]

and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *see also* *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Aetna Cas. & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also* *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *See Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d

Cir.2003); *see also* Celotex, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny,* 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23; *see also Jakimas v. Hoffman-La Roche, Inc.,* 485 F.3d 770, 777 (3d Cir. 2007). At this stage,"[g]enuine issues of material fact cannot be raised by speculation and conclusory allegations." *Dunkin' Donuts Inc. v. Patel,* 174 F.Supp.2d 202, 212 (D.NJ 2001)(citing *Trap Rock Indust., Inc. v. Local 825, Intern. Union of Operating Engineers, AFL-CIO,* 982 F.2d 884, 890 (3d Cir. 1992)).

## IV. DISCUSSION

As an initial note, the plaintiffs seem to implicitly present the argument that more discovery is necessary in order to make a determination on the

7

merits of this case.[1]

The court will dispatch with that contention first. "A party opposing summary judgment on the basis that additional discovery is warranted must 'show[ ] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition.' Fed.R.Civ.P. 56(d)." *Abulkhair v. Citibank and Assocs.*, 434 F. App'x 56, 61 (3d Cir. 2011). No such affidavit or declaration has been presented to explain why a three-year-old case needs an additional discovery period. Regardless, the plaintiffs cannot benefit from their own delay. This case commenced in August 2010 and the court essentially determined the essential issues for trial in on April 5, 2013, when it ruled on the motion to dismiss. (Doc. No. 45). Judge Carlson extended the period for discovery an additional 90 days from May 20, 2013 to August 19, 2013. (Doc. No. 48). The plaintiffs submitted their first set of interrogatories on July 29, 2013, three weeks before the close of discovery. (Doc. No. 52). They also completed the expert report several weeks late on September 9, 2013, well past the discovery deadline. (Doc. No. 65). In sum, the court finds that the evidence as currently presented is sufficient to decide the issues in the motion for summary judgment. There is no need to allow additional

---

[1]This argument is supported by the fact the plaintiffs filed a motion for an extension of time to complete discovery. (Doc. No. 74). The court notes that the discovery deadlines in this three-year-old case have been extended on numerous occasions.

discovery.

Pennsylvania has adopted the Uniform Commercial Code ("UCC") in governing "negotiable instruments." A negotiable instrument is defined under 13 Pa.C.S. §3104 as:

> an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
> (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
> (2) is payable on demand or at a definite time; and
> (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain:
> (I) an undertaking or power to give, maintain or protect collateral to secure payment;
> (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral; or
> (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

13 Pa.C.S. §3104. A holder in due course is defined as the holder of a negotiable instrument if "the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity," and the holder took the instrument for value and in good faith. 13 Pa.C.S. §3302. *JP Morgan Chase Bank, N.A. v. Murray*, 63 A.3d 1258, 1265-66 (Pa. Super. 2013). A blank endorsement is also defined by statute: "If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a 'blank indorsement.' When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of

9

possession alone until specially indorsed." 13 Pa.C.S. §3205(b); *Murray*, 63 A.2d at 1266. The parties do not dispute that the note secured by mortgage is a negotiable instrument that was properly executed in favor of Argent in March 2005. The central question is whether the assignment in blank of the note is valid.

Both parties point the court to the *Murray* case where the Superior Court of Pennsylvania remanded a case where the authenticity of a note was brought into question. The plaintiffs, relying on Javier Taboas's opinion, argue that the assignment is invalid given the requirements of the Pooling and Servicing Agreement regarding the assignment of notes placed into a specific trust. As *Murray* clearly notes, "challenges to the chain of possession by which [bank] came to hold the Note [are] immaterial to its enforceability by [the bank]." 63 A.2d at 1266. Given the plaintiffs' admission that the note was validly executed and that it now bears an assignment in blank, the central question is whether the defendants holds an original copy of the note and is a holder in due course.

The *Murray* court reversed the entry of summary judgment and remanded the case to the trial court because there was a material issue of fact as to whether the plaintiff-bank held an original copy of the note of which three different copies had been presented. 63 A.2d at 1266. Upon remand, if the bank "successfully establish[es] that it holds the original Note, and that it is indorsed in blank, under the UCC it will be entitled to enforce the Note against

10

[the obligor], even if there remain questions as to the chain of possession of the Note from the time of its making to its arrival in [the bank's] figurative hands." 63 A.2d at 1267. The same question is presented here, but in reverse given the position of the parties. The court must determine whether the plaintiffs have produced sufficient evidence whereby a reasonable jury could determine the defendants do not hold the original note.

The plaintiffs rely principally on two pieces of evidence: a copy of the promissory note from Bank of America without endorsement sent to the plaintiffs in August 2010 and the expert report of Javier Taboas. Assuming without deciding whether the copy of the note is admissible[2], submitting this copy of the note from Bank of America without any affidavit or supporting documentation does not raise a material issue of fact. The plaintiffs both contend that Bank of America sent them "a copy of the original note." (Doc. No. 63, Doc. No. 64). However, this misstates the plain language of the letter noting it included a "copy of your Note." (Id., Exh. F). There is no evidence to show that Bank of America was ever in possession of the original note or

---

[2]Although the plaintiffs address at length Judge Carlson's discussion of the admissibility of their copy of the note, they fail to acknowledge that his decision does not hinge on whether the note is admissible or not. The Judge properly analyzed the case in light of both parties' reliance on *Murray*, which is directly on point in this matter. Therefore, the central question is whether the copy of the note from Bank of America raises a genuine issue of material fact as to whether the defendants hold the original note that was assigned in blank.

11

maintains what could be considered an original copy. Even correspondence with Bank of America's counsel notes that Wells Fargo, N.A. held the note as of January 2010, several months before this suit commenced and seven months before plaintiffs' received the copy. (Id., Exh. E).

In comparison, the defendants produced a declaration from the vice-president of their record's custodian, Select Portfolio Servicing, Inc., that indicates he is in possession of the original note that has been endorsed in blank. (Doc. No. 54). The defendants included a copy of endorsed note with the motion for summary judgment. (Id., Exh. A). The plaintiffs own expert admits that the note appears to be endorsed by Argent's president and vice-president. (Doc. No. 65). The parties do not dispute that the original note was validly executed in favor of Argent. Therefore, Argent was a holder and could transfer the note. The expert opines "only further discovery" would make a final determination as to the authenticity of the note. (Id.). The plaintiffs' expert discusses at length why the chain of custody is essential to the determination of whether the defendants are holders in due course. However, as the *Murray* case makes clear, the chain of custody is irrelevant if the defendants hold the original note endorsed in blank by Argent. Moreover, the plaintiffs have proffered no evidence to bring into question that the assignment was made on April 5, 2005, as attested to by the record holder. The speculation of the expert is insufficient given that his report is riddled with qualifications that more discovery would be necessary to substantiate his conclusions. As such, the

plaintiff has proffered insufficient evidence to survive the motion for summary judgment.

The plaintiffs also contest the report's determination that the assignment of the mortgage to the defendants was valid. In this instance they rely on a single signature on the document and Javier Toboas's opinion to challenge the assignment. The plaintiff points to the August 2013 recording of the mortgage to raise issues as to whether the assignment was executed in April 2005. The recording of an assignment of mortgage has no legal import between the parties to the assignment as it is "not a prerequisite to [a bank] having standing to seek enforcement of the mortgage via a mortgage foreclosure action." *US Bank N.A. v. Mallory*, 982 A.2d 986, 994 (Pa. Super. 2009). The mere fact that an assignment goes unrecorded, even for an extended period of time, does not negate a validly executed assignment. *Fusco v. Hill Financial Sav. Ass'n*, 683 A.2d 677, 681 (Pa. Super. 1996). Aside from general accusations, argument, and unsupported claims, the plaintiffs have proffered no evidence to dispute the April 5, 2005 assignment.

Turning to the issue with the signature, the plaintiffs' centrally contest a signature on "Exhibit B" attached to the assignment of mortgage. (Doc. No. 54, Exh. C). The parties agree that the original mortgage was validly executed in favor of Argent. As Judge Carlson discussed, the assignment of the mortgage, dated April 5, 2005, was notarized, affirming that the individuals representing Argent duly appeared before him and signed the document. (Doc. No. 54, Exh.

C). The document indicates that there is a "legal description [of the property] attached hereto and made part hereof." Exhibit A is a legal description of the 16 Laurel Lane property. It states the mortgage of the plaintiffs and the date of its execution, March 25, 2005. It also includes a line directing the assignment is made in favor of "See Attached Exhibit 'B'." Attached exhibit B notes that the assignee is Wells Fargo Bank, N.A. (Id.). The plaintiffs only question the authenticity of Exhibit B, not any other part of the assignment.

The expert challenges the validity of the assignment because exhibit B is attested to by what he characterizes as an illegible signature. (Doc. No. 65). He does not direct the court to any evidence that contradicts the validly executed assignment to the defendants on April 5, 2005. Save for this opinion, the plaintiffs point the court to no other evidence to rebut this facially valid assignment to the defendants. In *Murray*, three sets of documents, each purporting to be the original, were presented by the bank to the debtor. 63 A.2d at 1267. No other party has claimed to hold the original note, no other assignment of mortgage has been produced, and no additional evidence has been produced to challenge the assignment by Argent to the defendants. As previously noted, the court finds no reason to deny the motion for summary judgment on the basis that more discovery is necessary. Again, merely questioning the evidence is insufficient. The plaintiffs must produce evidence that would property challenge validity of the assignment of mortgage to the defendants. They have failed to do so.

Given the foregoing discussion and analysis, the court has determined that no genuine issues of material fact exist between the parties. The defendants have produced abundant evidence that Wells Fargo is a holder in due course of a promissory note secured by a mortgage in land that was validly assigned on April 5, 2005, thereby entitling that entity to all rights afforded to holders in due course under Pennsylvania law. As such, summary judgment is appropriate and will be granted.

### V. CONCLUSION

For the reasons discussed above, Judge Carlson's report and recommendation, (Doc. No. 77), is **ADOPTED IN FULL** and the defendants' motion for summary judgment, (Doc. No. 53), is **GRANTED**. An appropriate order shall follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: January 23, 2014**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2010 MEMORANDA\10-1710-02.wpd